# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW JERSEY

U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

| | |
|---|---|
| **Hon. Michael B. Kaplan** | **609-989-0478** |
| United States Bankruptcy Judge | 609-989-2259 Fax |

May 28, 2009

Howard Kleinhendler, Esq.
David Yeger, Esq.
Wachtel & Masyr, LLP
110 East 59th Street
New York, New York 10022

Joseph J. Haspel, Esq.
40 Matthews St., Suite 201
Goshen, NY 10924

    Re:    ***CRM International, Inc***.
                  **Bankruptcy Case No. 04-47594 (MBK)**
                  ***Pearl River Plumbing, Heating & Electric, Inc. v. Pepco***, **et al**
                  **Adv. Pro. No. 05-6271 (MBK)**
                  **Motions by Joseph Grunwald for (1) Leave to Amend Answer to Assert Cross Claim for Indemnification and (2) Summary Judgment on Cross-Claim**

Counselors:

       The Court has reviewed the arguments and submissions in the above referenced matter and issues the following ruling:

       This matter is before the Court by way of motions filed by Defendant, Joseph Grunwald ("Grunwald" or "Movant") seeking (1) leave to amend his answer to assert a cross-claim against Northern Services Group, Inc. ("NSG"), pursuant to the N.Y. Not-For-Profit Corporation Law ("NPCL") §§ 722-724 for indemnification of his attorney's fees incurred in this proceeding; and (2) summary judgment against NSG on the cross-claim for indemnification (collectively, the

1

"Motions"). The Court has reviewed the written submissions and notes that all parties have waived oral argument. For the reasons set forth below, both motions are denied, with prejudice.

The facts, for all relevant issues, are undisputed. On December 8, 2005, Plaintiff, Pearl River Plumbing, Heating & Electric, Inc. D/B/A/ Bertussi's ("Pearl River") commenced the above-entitled adversary proceeding (the "Proceeding") against various defendants, including, *inter alia*, Grunwald in his capacity as the CFO of NSG.  NSG was also named as a defendant in the Proceeding.  NSG is a New York not-for-profit corporation. Grunwald was an officer of NSG.  Pearl River was a subcontractor on a job located in the State of New York, wherein the Debtor, CRM International, Inc. ("CRM") was the general contractor. NSG was the contracting party with CRM.  Peal River's complaint sought damages for alleged conversion, fraud, as well as the imposition of a constructive trust and piercing the corporate veil.

The proceeding had been commenced previously, on or about May 13, 2005, in the Supreme Court of the State of New York, Rockland County, and thereafter, removed by Defendant, Pepco Energy Services, Inc. to the U.S. District Court for the Southern District of New York. Then, as a consequence of the bankruptcy filing of CRM, the matter was transferred to the District of New Jersey and, with the consent of the parties, referred to this Court. On or about December 8, 2005, Plaintiff re-filed its complaint as the instant adversary proceeding. While Grunwald and NSG initially shared the same counsel, upon the filing by NSG of a complaint against Grunwald and others in November of 2006, Grunwald was forced to retain separate counsel.

The Court heard various motions for summary judgment and Plaintiff's cross-motion to amend its complaint on June 2, 2008. At that time, the Court dismissed the causes of action

against several defendants, including Grunwald and NSG. The Court entered an Order memorializing its ruling on July 21, 2008.

The Court first turns its attention to Grunwald's motion seeking to amend his answer to now assert a claim against NSG for indemnification. After a responsive pleading is served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). See also Fed. R. Bankr.P. 7015 (providing that Rule 15 is applicable to adversary proceedings). The grant or denial of leave to amend is discretionary. *Foman v. Davis*, 371 U.S. 178 (1962). Absent "undue delay," "bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice," and "futility," leave to amend shall be freely given. *Id*. There is a general presumption in favor of granting the moving party leave to amend. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir.1984). The Court should examine whether the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation or (4) is futile. *Id*.; *see also Dais v. Lane Bryant, Inc*., 1999 US Dist. LEXIS 4387 (S.D.N.Y. 1999).

Notwithstanding the presumption in favor of granting parties leave to amend, the application of the above-cited factors to the present matter steers the Court to the ineluctable conclusion that Grunwald's motion to amend should be denied. This action was brought initially by Plaintiff over four years ago and we are fast approaching the first anniversary of the Court's bench decision granting NSG and Grunwald their respective motions for summary judgment. Indeed, the remaining parties have reached recently a settlement of all remaining claims. While mere delay alone, absent a showing of bad faith or undue prejudice by the non-movant, is not

sufficient to deny the right to amend a pleading, reviving this matter to address belatedly indemnification claims at this point in the proceedings prejudices the interests of NSG, as well as the Court. *See, e.g.*, *Adams v. Gould, Inc*., 739 F.2d 858, 868 (3d Cir.1984) ("The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."); *see also, Ross v. Houston Indep. Sch. Dist*., 699 F.2d 218, 228-29 (5th Cir.1983) (denying amendment when the amendment "would add new and complex issues to a case already protracted and complicated," would require new discovery, addition of twenty-six new parties, and pre-trial preparations and actual trial might require several years); *A. Cherney Disposal Co. v. Chi. & Suburban Refuse Disposal Corp*., 68 F.R.D. 383, 385-86 (N.D.Ill.1975) (finding prejudice and denying amendment where the proposed amendment was requested five years after the case was filed, required further discovery, and substantially changed the complaint). As noted by counsel for NSG, Grunwald has been aware of his entitlement to seek indemnification for his attorneys fees in the underlying litigation since being compelled to retain separate counsel in the Fall of 2006. There is no justification for waiting nearly three years since, or a year beyond the favorable disposition of the summary judgment motions, to seek such relief.

Even were this Court to ignore the obvious prejudice and burdens occasioned by Movant's delay, the request to amend the answer would be denied as being futile, given the Court's lack of jurisdiction over the indemnification dispute. See, *In re Alpharma Inc. Sec. Litig*., 372 F.3d 137, 153 (3d Cir.2004) (stating that leave to amend will be denied if the amendment would be futile); *In re Fleming Cos., Inc*., 347 B.R. 163, 167-68 (Bankr.D.Del.2006) ("Futility of

4

amendment exists when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue. Thus, a trial court may appropriately deny a motion to amend where the amendment would not withstand a motion to dismiss." (internal citations omitted)). In the matter, *sub judice,* the Court concludes that Grunwald's claim for indemnification would not withstand a motion to dismiss for lack of jurisdiction.[1] "It remains rudimentary law that '[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. . . . To the extent that such action is not taken, the power lies dormant.'" *Finley v. United States*, 490 U.S. 545, 547 -48 (1989) (*quoting The Mayor v. Cooper*, 6 Wall. 247, 252 (1868)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)(noting "[f]ederal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute."). Moreover,

---

[1]Alternatively, the Court would exercise permissive abstention of the claim to afford resolution in the state court. It is well-settled that a court may raise the issue of abstention *sua sponte*. *In re Strano,* 248 B.R. 493, 503 (Bankr. D. N.J. 2000). The decision whether to abstain falls within sound discretion of the court. *In re Asousa P'ship*, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001). Even where it has jurisdiction, a bankruptcy court is not compelled to hear a case; the court may, in its discretion, abstain from hearing the matter. *In re P & G Realty Corp.*, 157 B.R. 239, 242 (Bankr. W.D. Pa. 1993). Abstention in the bankruptcy court is governed by 28 U.S.C. § 1334(d) and 11 U.S.C. § 305(a), which confer discretion upon bankruptcy courts to dismiss or suspend an action should such decision better the interests of the parties. *In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr. W.D. Pa. 1988). To determine whether permissive abstention is appropriate, courts apply a variety of factors, including the following:

> (1) the court's duty to decide what is before it; (2) the effect on the efficient administration of the estate if the court abstains; (3) the possibility of inconsistent results stemming from the abstention; (4) the waste of judicial resources; (5) the presence of difficult or unsettled areas of state law more properly addressed in a state forum; (6) considerations of comity; (7) prejudice to any non-debtor party from proceeding in federal court; (8) the extent to which state law issues predominate over bankruptcy issues; (9) the presence of a related proceeding commenced in state court; (10) jurisdictional basis other than 28 U.S.C. § 1334; (11) how related the case is to the main bankruptcy case; (12) the substance of a "core" proceeding; (13) the feasibility of severing state law claims from the bankruptcy case; (14) the burdens to the court's docket; (15) the existence of a right to a jury trial; and (16) the presence of non-debtor parties in the case.

*In re Strano*, 248 B.R. 493, 504 (Bankr. D. N.J. 2000). The Court notes that there are pending state court actions in which this claim for indemnification could be timely adjudicated; moreover, application of the above amply support abstention in this matter.

"[b]ankruptcy courts are created pursuant to Congress's authority under Article I of the Constitution, not Article III," and bankruptcy courts, therefore, have less jurisdiction than Article III courts. *In re Premium Escrow Servs., Inc*., 342 B.R. 390, 403 n.12 (Bankr. D.D.C. 2006) ; *see also In re Johnston*, 2007 Bankr. LEXIS 1174, at *28 (stating "a bankruptcy court should conservatively exercise jurisdiction in recognition of its limited Article I status, and should not venture into the unwarranted exercise of the essential attributes of Article III judicial power."). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence." *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 805 (3d Cir. 1981).

The basic statutory grant of bankruptcy court subject-matter jurisdiction is contained in 28 U.S.C. § 1334. Specifically, § 1334(a) provides the district court with "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). As in this case, where the dispute does not involve the debtor, the party invoking jurisdiction bears a significant burden of establishing that the dispute can be deemed "related to" the debtor's case. *In re City Wide Press, Inc*., 107 B.R. 68, 70 (Bankr. E.D. Pa. 1989), "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (holding that an action between non-debtors was not related to a bankruptcy case even though the defendant had a potential common law claim for indemnification against a

debtor). "Bankruptcy jurisdiction ... was not conferred for the convenience of those not in bankruptcy." *Id*. at 996. In other words, "litigation that would not have an impact upon the administration of the bankruptcy case, or on property of the estate, or on the distribution to creditors, cannot find a home in the district court based under the court's bankruptcy jurisdiction." 1 Collier on Bankruptcy § 3.01 [4][c][ii][B][5] (15th ed. 2005). The majority of circuits have adopted this rule for "related to" jurisdiction. *See* Bankruptcy Law Manual §7:5 n.6 (5th ed. 2002). No argument has been or can be made that the Movant's state law indemnification claim for attorneys fees, bottomed on New York statutory law, would have any impact at all upon the administration of the estate; accordingly, the dispute does not fall within the "related to" jurisdiction of the Court.

In light of the denial of Movant's motion to amend the answer to include a cross-claim for indemnification, the Court need not address the summary judgment motion and denies same as moot. The Court will enter the appropriate orders.

Dated: May 28, 2009

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge